case number 24-1172 United States v. Lor Good morning or afternoon, Your Honors. I don't know which it is. I'm Josh Lee from the Federal Public Defender's Office and I represent Conn. Lor. The question presented in this case is whether the district court clearly erred when it ruled that the government met its burden to prove that a 1995 Honda Civic that Mr. Lor stole was worth at least $2,000. This court should have a definite and firm conviction that the government did not meet its burden of proof. The police who arrested Mr. Lor generated a blue book report for the stolen car that 1. Estimated the car's value as $1,939 and 2. Stated a valuation range with a preponderance of values less than $2,000. The prosecution presented no credible evidence that the car was worth more than $2,000. It didn't present any contrary report that valued the car at $2,000 or more. It didn't present proof that any similar car had sold for $2,000 or more and it presented no valid reason to think that the blue book overestimated the car's value. Under those circumstances, the court should find that the government clearly failed to meet its burden of proof. So one thing that's important, I think, is that this $2,000 threshold is an element of the offense that the government had to prove to obtain this four-level enhancement. So it's a bright line rule. If the true value of the car is $1,999.99, he's not guilty of the felony offense. So the fact that this is close to $2,000 is just not good enough. There's a case from the Colorado Supreme Court called Henson that says that if the prosecution's proof is that the value of the property is in the vicinity of the threshold, then the defendant's not guilty of the offense. So here, the blue book valued the car at $1,939 based on a survey of actual transactions involving similar- Well, that's the midpoint. That's not actually the value. There's a range, which is important to the facts here, isn't it? Right. I think that, yes, this was the valuation and then there's a margin of error on either side, right? But that actually helps Mr. Lohr, not the government. I'm not sure I'd call it a margin of error. I think it gives a range of the valuation depending on the nature of the vehicle, basically. Right. It's- Which we don't exactly know here, but- So what, yeah, what it does do is- $1,188 to $2,689 is the range that the blue book gives. Right. And so the reason, here's why I think that it helps Mr. Lohr. It helps Mr. Lohr for several reasons. One, you have the Aragon case that says, you know, where you have a couple estimates, the district court should err on the side of caution and give the defendant the benefit of the doubt. So, actually, the district court needed to assume it fell on the low end of the range. So that's reason number one. Reason number two is we're not in equipoise here. Fifty-four percent of the values fell below $2,000 and only 46 percent of them fell above. But, right, but there's other- the government, that's not the only evidence that we have. If that were the only thing we had, your argument would be stronger, I think. But don't you have to deal with the fact that you also had a CarMax offer of $1,100. You had the Facebook marketplace ads for similar vehicles for sale between $3,200 and $4,500 and even up to $6,000. I mean, the district court was entitled to certainly select something anywhere in the range from $1,100 to $6,000, really, and the Kelley Blue Book was just one aspect of that. So, I think it's not right that the district court was entitled to rely on these Facebook marketplace ads. So, you know, if all we have is the Blue Book range, right? But that's not all we have. That's not enough. So then the question is, if the Blue Book doesn't get the government where it needs to be, the question is, like, what else do they have? And these Facebook marketplace posts, they don't count for anything. Number one, these are asking prices, and as such, they just aren't relevant because the question is, what would a buyer pay, not what a seller hopes to get. And then these particular asking prices definitely don't count as any sort of legitimate evidence. These are just random people on Facebook posting that they wish somebody would pay them double the Blue Book value for their old cars. I mean, it's not evidence of anything. I could go on Facebook right now and list my 14-year-old Toyota Camry for a million dollars if I wanted to do that. So I don't see how that can be taken as evidence of anything. Then, the other thing that we have, so that's the Facebook marketplace posts don't count as anything. The other thing that they have is they say, well, in this other theft case that we were prosecuting, we have a husband of the theft victim who said, I think that the car that was stolen in that case was worth $6,000. But again, there was never any finding by anybody that the car was actually worth $6,000. That's just like what the husband implausibly guessed that it was worth. And you can't use, you know, this court's cases say you can't make fact-finding based on speculation or guesswork. And so you can't use the husband's guess about what a different car was worth to value what the car was in this case. So really, what we're down to is we have, we only have one piece of legitimate evidence, is this Blue Book report. And the Blue Book report shows, more likely than not, that the car was worth less than $2,000. The other thing that, the other things that the government points to are just not worth anything. You know, one of the things... Before you go on, does the record indicate whether or not Kelly will factor in condition? The record indicates that the police officer in this case used the mechanical condition of the car to generate the report. So what the police officers... I'm talking about, is there anything in the record that affects your Kelly Blue Book information that indicates condition could have been put into the search? Other than the police officer saying that he put it into the search? Into the Kelly Book. The police officer said he did. So that's, the evidence in the record is that, that the police officer asked the victim, you know, what's the mechanical condition of your car? The victim said it's in good mechanical condition. And he said, based on this information, I enter the car into Blue Book with, into the Blue Book with the VIN number and the mileage. Okay. So, but in terms of... But what about condition other than mechanical condition? That is, dense, torn, upholstery, stuff like that. There's, there's no evidence in the record, one way or the other, about whether that's factored into the Blue Book report. Although, again, the officer who generated the Blue Book report listed the factors that he put in there, which was the good mechanical condition of the car, the VIN number of the car and the mileage of the car. And he didn't list the exterior condition of the car, which helps me because there... But he said something else, and I can't remember what it was, that indicated this was not clean as a whistle. The officer. So there's, there are, there are other police reports. So, so we have, we have several police reports. There's one, the officer who generated the port, who generated the Blue Book report says, here's what I consider. What the car was, the mileage of the car and the fact that it ran really well. Then there are other police reports that are like, you know, there's a dent to this car. There's headlight damage. The exterior really overall is only in fair condition. There's no indication that that was taken into account in the Blue Book report. So if, if, if anything, the Blue Book value overestimates the true value of the car. So we have these converging things, you know, which you really need when the standard of review is clear error, which is the pinpoint estimate was below $2,000. Plurality of the preponderance of the values are below $2,000. The government hasn't indicated any reason to think that the Blue Book value overestimates or underestimates the value of the car. None of the other things they presented are worth anything. If anything, the Blue Book overestimates the car. Did the district court consider the fact that apparently the condition of the exterior was not entered into the Blue Book value equation, I guess I'd call it? So there was argument about that. I mean, that's kind of important. Yeah. So at the sentencing hearing, so defense counsel did point out these defects in the car. And at the sentencing hearing, the government tried to minimize the defects in the car and compare them to other cars. The district court, though, really, its ruling was pretty conclusory. It just said, I find that the government met its burden of proof. I thought that that whole discussion had to do with where within the Blue Book range this car might fall, not, oh, gee, the range was wrong to begin with. It should have been a lower range. Oh, right. Yeah. And that would be my position. My position is that, if anything, the 1939 estimate that's the midpoint of the range, that the damage to the value, the damage to the car pushes it towards the lower end of the range. So that's a reason to, a further reason, in addition to the rule of law that the district court is supposed to err on the side of caution. Another reason why it shouldn't just pick something in the higher value of the range. So, you know, I think one analogy that I thought about that I think is similar to what we have here is, you know, imagine that the question were one of drug purity and the government had to prove that methamphetamine was 80 percent pure. And then imagine that it got back a lab report that said this methamphetamine is 79 percent pure plus or minus five percentage points. We don't know for sure that the methamphetamine is not 80 percent pure, but we can definitely say that it would be an error to find by a preponderance of the evidence based on that lab report that the methamphetamine was 80 percent pure. So in the same way, this Blue Book report, even though the valuation range extends above $2,000, the preponderance is that it's below $2,000. Could you briefly address the Bennett versus Price case, the Colorado case, that that would seem to suggest that listings or offers which you're saying have zero value, which it seems to say that they're not enough standing alone, but it doesn't suggest that they don't have any value, which is what you're saying. The way that I read the Bennett case is that it does say that because it says that when somebody presented listing prices, right, that their presentation of listing prices was no admissible evidence and that listing prices cannot be used as proof, right? That being said, I don't think you really need that case because I think what we have here is we don't have the listings of real estate professionals or the retail price tags from Walmart. What we have are Facebook posts. And unless there are further questions, I'll insert a bunch. We have an issue here about expediting, is that right? Yes, right. Right, yeah. Mr. Lohr would be, you know, pretty close to finishing up his sentence before too long, so I ask for expedited argument, and I would also ask for expedited decision. Thank you.  Good afternoon, and may it please the court. I'm Andrea Wong on behalf of the United States. The trial court here was presented with a blue book range, and there were a number of possible values within that range. There are three separate categories of evidence in the record below that support the trial court's finding here that the value of the Honda was not in the exact middle of the range, but instead was at least $61 above the exact middle of the range. The first category of evidence that supports the trial court's finding is the Facebook marketplace posts. These are offers of sale. Colorado law is clear that in determining the value of stolen property in their criminal code, the finder of fact can consider, in the mix of evidence, that offers for sale. This is the statute relied upon the parties of the trial level and in this court. It's 184414. It's a statute titled Evidence of Value, and it's the statute that's used to determine the value of stolen property. The first provision of that statute is about retail sales. The second provision of that statute, subsection 2, deals with sales in general. What if the offers aren't reasonable? What if they're just, as counsel says, you know, highly inflated values, what the owner would just love to get, but doesn't expect to get off Facebook Marketplace, for instance. Your Honor, that would go to the weight. The statute does not talk about that, but that would go to the weight of the evidence. And in this case, there were four Facebook Marketplace posts. They're summarized in a chart fashion on page 18 of the answer brief, and you can see they're all in a similar ballpark. Even if you discounted them by 30%, and you would still get to the $2,000 threshold at issue in this case. Judge Moritz, you correctly noted that the Bennett case doesn't, did deal with the situation where that was the only evidence. That's also a civil breach of contract case. The criminal statute postdates Bennett by four years. The Bennett case has never been relied upon in a case that we've been able to find in a criminal case in Colorado. The second piece of evidence is whether the car was in a good mechanical condition, and I do want to turn to Judge Murphy's question about what the record says about whether that good mechanical condition was or was not baked into the Kelly Blue Book value. I'll direct the court to volume one of the record, page 107. That's the actual report that discusses how the Kelly Blue Book valuation was generated, and that explains that the officer learned that the vehicle had 160,000 miles on it, and that it was in good mechanical condition. The next sentence is where the factual disagreement lies between the parties that was highlighted in the defendant's reply brief. The next sentence says, based on this information, that's the part of the sentence seized on by defense, the vehicle was entered into Kelly Blue Book with the vehicle's specific VIN number and mileage, and that's the end of the sentence. It is certainly a fair reading to believe that that was what was entered, what he said was entered, the VIN number and the mileage, and not the condition. It's also a reasonable, you know, good faith argument what defense counsel is making, but the record certainly supports the fair reading that it was not included, and because the Blue Book does explain that where a particular vehicle falls along the range that's given depends on a variety of factors, including the actual vehicle's condition and the local market factors, it's certainly reasonable to pick a value at least $61 over in the middle of the range based on the uncontroverted evidence that the vehicle was in good mechanical condition. There's one, a problem I'm having is is mind you, I, we all respect the role of the trial judge, and I've been there for a decade, but the court had before these, I just can't get these pictures out of my mind to look at this vehicle and say that thing is worth more than the midpoint of the Kelly Blue Book, and it bothers me that I'm even asking the question, because I'm not a fact-finder, we have to respect that, but I'm just having trouble dealing with it, and what it does is it makes me then focus on the other evidence, and the other evidence is at least problematic, that will help me. So your honor, this is a 1995 Honda Civic, right, so the value of a 1995 Honda Civic is whether it drives from one place to another. We have comparative standards, we have to rely on comparative standards, right, the law doesn't require you to sell this exact car, and we have the four comparative standards that are for sale. We have the comparative standard of the exact, sorry, of a vehicle, a similar vehicle, a vehicle that's one year newer, that was stolen the month before. But we don't have no mileage on that. We have no mileage, agreed. We don't know what the condition was looking at it. That's correct, we know only that it's missing a muffler part. Right, and the owner's friend, boyfriend, husband, says I'm not sure if he said it's worth this, its value is, or that I think it's $6,000. Correct. You know, your honor, we well, the judge went $61 over the midpoint, and in a clear or error standard, this court looks at either there was no evidence, that's certainly not the case. We have three categories of properly considered evidence. You can argue about the weight of the evidence, but there were three categories of evidence properly legally considered. So that does not meet the no evidence test. The second prong of the clear error is that if you're left with a definite and firm conviction that a mistake was made. My argument to you is that these three different categories of evidence do support the court's finding, and it was, there's certainly not grounds to decide that you're definitely and firmly convinced that a mistake is made. I believe the trial court made the correct decision, and that the three categories of evidence support the finding. On the three Facebook listings? Yes, there are four, yes. Four? Was there mileage on any or all of them? Yes, on all of them, your honor. Was condition stated on any or all of them? I don't believe so, your honor. Pardon? I don't believe so. So they just gave the mileage and the make, model, and year. I believe that's right. The chart on page 18 of the government's answer brief summarizes the year, the make, the model, the mileage, and the list price. I'm looking at one of the actual Facebook marketplace. Let me ask you this. What's your view on what Bennett says and whether or not it's applicable? Bennett says that in a breach of contract case for real estate, when the only evidence is offers of sale, that does not meet the burden for damages. But it is not applicable because there is a more specific Colorado criminal statute that addresses this precise issue that was enacted four years after Bennett. And it says? It says that the court may consider comparatives. Well, let me tell you the exact language. The court, in looking at a sales price for stolen property, the court can look at similar property and that includes consideration of, quote, tags, signs, shelf tags, and notices tending to indicate the price of the thing involved. In other words, offers. It was enacted in 1988 before. It's clear it was talking about offers. Yes, I agree. I believe it's clear it's talking about offers. Okay, when it was talking about the case, the precise case before Bennett, they said when offers are the, did it say, the only evidence? I know in the case, I know in the Bennett case, offers were the only evidence. The only evidence, okay. Yes, I do know that. That's all. Okay. I do want to touch briefly on the $6,000 value of the similar car stolen the month before. And just note that that value was not controverted in the record in any place. Well, there's a reason why it wasn't controverted, isn't it? Because it was not an issue. It was an issue. The government did cite that car in its brief to the trial court in discussion of the value of this car. That's at stake today. It did refer to the court to the other car. But it was not an issue in the underlying sentencing of the case for the, anyway, defendant's position was, I was a mere passenger. I didn't steal it. And that was the issue, correct? Correct. Correct. That is correct. And then in the portion of the disagreement between the parties about the car before this court, the 1995 Civic, the government did cite to the trial judge as a comparative standard the 1996 Honda stolen a month before. In the reply brief filed by the defense in the trial court stage, they did not address that argument. Well, there wasn't anything to address. They didn't know anything about it, right? Because it wasn't an issue. They did not say, court, please do not place much weight on that car because we don't know much about it. They did not address it in any way. They have never offered an alternative value for that car. Although as recently as the reply brief to this court, they did admit that that car was worth at least $2,000. Unless the court has any additional questions, I will close by asking this court to decide that it was not fair error for the trial court to make the factual determination that the Honda Civic was worth at least $2,000 and accordingly affirm the sentence of Mr. Lohr. Thank you very much. Thank you, counsel. Any rebuttal? A couple of things. The government says in this statute, well, the statute says that you can look at price tags to to figure an item's value, but price tags are totally different from Facebook posts. It's a matter of common sense that the price tag of the store reasonably corresponds to what somebody is probably going to pay for that item. So a price could only even be logically relevant if we have reason to believe that it reasonably corresponds to what a buyer would ultimately pay. Here, we know that these Facebook posts do not reasonably correspond to what somebody would actually pay. Even the government admits that the Blue Book range is accurate, and these prices are way above that. What are the prices? There are four of them. What are the prices? They range from $3,200 to $4,500 for cars that they say are similar. All of those are way above the Blue Book range that the government admits is accurate. So essentially... Refresh me. What's the cap? $2,600. Thereabouts. $2,689. So all these are way above that. So the government's position basically is, well, these are 75% above the top of the Blue Book range, but surely they wouldn't be a hundred percent above. Well, why? We don't know what the market norms on Facebook marketplace is. The government didn't prove that. These people don't have incentives or expertise to list a realistic asking price. Where was it where they were talking about marked price? Where did you get that? Say again? The marked price? Yeah, the retail price. Oh, well, the government is citing a statute that says in determining value, you can consider a retail price tag. Now, if anything, I think expressionis, it means you can't consider other asking prices. It also says notices. I'm not sure what that means because that notices, the statute uses a term, you can consider notices. Yeah, I'm not sure what that means either, but it sounds like more formal prices. So your position is that tags doesn't really include what's happening on social media? Exactly, exactly. And the statute doesn't address social media separately. Right, that's right. That's right. So I would ask for you to... Did you make that argument about the statute? The government raised it for the first time. Okay. So I'm just, yeah, the government didn't argue this before. I'm just responding. It didn't seem familiar to me. Yeah. Yeah, it's just something that they raised for the first time here. All right. Thank you. All right, well, thanks to you both for these very helpful arguments. The case will be submitted. Counsel are excused and the court will be in recess until tomorrow morning at 9 o'clock. Thank you.